Susan Johnson v. Davis County et al. Case No. 1:18-cv-00080-PMW

Kennon Tubbs MD
13584 Carolina Hills Court
Draper, Utah 84020
(801) 502-3473
jailmd@gmail.com
January 22, 2020


Jesse Trentadue
Suitter Axland, PLLC
8 East Broadway, Suite 200
Salt Lake City, Utah 84111

Dear Jesse Trentadue,

    I am a family practice physician and have practiced at the Utah State Prison for 15 years. My educational background is documented in the attached curriculum vitae. I am currently the medical director for eleven county jails throughout Utah and Wyoming. The counties in Utah include Utah, Juab, Duchesne, Daggett, Wasatch, Summit, and Tooele. In Wyoming, the counties are Lincoln, Uintah, Sweetwater, and Teton. I am a certified provider by the National Correctional Commission on Health Care (NCCHC). I supervise three Physician Assistants and two nurse practitioners who provide the majority of patient care at these facilities. I supervise thirty-five nurses and establish protocols for nursing care at these facilities. I have extensive experience with the supervision of correctional facilities as well as appropriate health care triage, and I am also familiar with the standard of care required of nursing staff in a correctional facility. I have experience in prescribing Suboxone, Subutex, Clonazepam, Xanax, and Tylenol sleeping medication. I also have extensive experience in treating drug abuse, intoxication, and overdose in a correctional setting. I am a board-certified family physician by the American Board of Family Physicians and uphold its practices and values as the standard of care in correctional facilities.
    I have reviewed the following materials concerning Gregory Hayes.

Plaintiffs' Complaint
Davis County Defendants' Answer to Complaint
Responses to Plaintiffs' first set of discovery
Plaintiffs' Initial Disclosures
Videos
Plaintiffs' Amended Complaint.
Davis County Jail records Hays 001-643
Deposition Todd Richardson
Deposition Daniel Layton
Deposition John Herndon
Deposition Kenneth Hatfield
Deposition Kelcie Baer

Deposition Austin Mead
Deposition Cheyenne Kelly
Deposition Andrew Hayes
Deposition Heather Arnell
Deposition Megan Reid
Deposition Danna King
Deposition Susan Johnson
Deposition Matthew Hayes
Deposition Kristin Welch
Expert report Ken Starr MD
Expert report Tom Green

     I have specifically reviewed these records to determine whether, within a reasonable degree of medical certainty, the standard of care was met concerning Hayes while detained by the Davis County detention center. I have also evaluated the records as to whether the available evidence indicates that the nurses and custody staff involved ignored a perceived serious medical need or otherwise failed to properly respond to them. The above records disclose the following facts in summary:

     Mr. Hayes was arrested multiple times involving charges for possession or use of controlled substances, driving while under the influence, retail theft, and intoxication. He used a variety of drugs including spice, alcohol, opioids, and benzodiazepines. He had a long history of polysubstance abuse.

     On October 19, 2017, Hayes was booked into the Davis County Jail. Upon intake, he reported substance abuse and brought several medications with him to jail. Clonazepam 1mg tablets quantity twenty-three and suboxone 8mg quantity nineteen. These medications were stored in his property and not approved for use inside the jail.

     On October 23, 2017, Hayes was evaluated by the jail nurse and noted to not have any withdrawal effects from the discontinuation of these medications. He was incarcerated for two months.

     On December 13, 2017, at 1318 he was released from custody with his property, which included his prescriptions. He was picked up by his brother, Andrew, and brought to Andrew's home. Upon arriving home, he called someone on his cell phone for 20 minutes. Approximately 3 hours later Andrew noticed that his brother Gregory Hayes was high on drugs and tearing up the house. Andrew believed he was able to get some drugs from somebody after he got out of jail. Andrew contacted John Herndon, his parole officer. Andrew was instructed to contact 911, and Clearfield officers were dispatched to Andrew's home. EMS was called and was in route. Officer Heather Arnell arrived on the scene before EMS. Officer Arnell testified that Hayes reported consuming three clonazepam and two sleeping pills. Hayes was noted to have an empty bottle of Clonazepam and Tylenol PM with pills still in the bottle. Andrew Hayes and Arnell both testified that Gregory Hayes was, "adamant that he did not want to go to the hospital." Mr. Hayes declined hospital care or EMS treatment. Officer Arnell contacted Hayes probation officer John Herndon and discussed the case. Under orders from Herndon, Arnell then took Gregory Hayes to Davis County Jail.

     On December 13, 2017, at 2006 Hayes was booked into Davis County Jail. Upon arrival, he was escorted to booking by Probation Officer John Herndon. He was able to answer the

pre-booking questions and was ambulatory. This process was videotaped by Mr. Herndon and he expressed no concerns about booking Hayes into jail. Having been booked on numerous occasions Mr. Hayes was familiar with the booking process and the booking officers were familiar with him. At intake, Hayes was falling asleep while talking to the officers and struggling to follow simple commands. Deputy Kelcie Baer testified that Hayes reported during the booking process that he took his "normal dose" of anxiety medication. Baer testified that Hayes, "completed the booking process with no issues whatsoever." Baer reported that Hayes brought empty pill bottles into the jail and she placed them in the medical box for the nursing staff. Baer testified that she knew Hayes well as he worked for her as an inmate worker for the past several weeks while incarcerated. Hayes was placed in a holding cell 5 for observation by the officers due to his risk level and signs of drug use observed during the booking process.

On December 14, 2017, Officer Reid testified that she was watching Hayes more closely because she knew him. Reid testified to checking on Hayes every five to ten minutes but made no log of these evaluations. At 0059 Reid reported Hayes was breathing heavy while he was sleeping. Nurse Daniel Layton was contacted to evaluate Hayes. Upon arrival to the bedside, Hayes was stable, and vital signs were taken. Vital signs were stable, and Hayes was repositioned to avoid sleep apnea. The officers placed blankets under Hayes' head to position him on his side to improve his breathing. Deputy Kelly noticed Hayes breathing hard at 0300 having another apneic episode with blue lips. Nurse Layton was contacted again and obtained vital signs. He still found Hayes to be arousable and Hayes was repositioned and officers continued to monitor him on their regular checks. Kelly testified that after nurse Layton's evaluation Hayes breathing and color had returned to normal. At 0530 Officers noted Hayes to be in respiratory distress and unresponsive. 911 was contacted, and officers responded to the cell to begin CPR. Hayes was given Narcan with no effect. He was then transported via ambulance to the hospital where he passed.

The autopsy reported moderate blood levels of olanzapine 27ng/ml, clonazepam 2.6ng/ml, and buprenorphine 7.9ng/ml. These levels equated to olanzapine 20mg tablet, slightly elevated levels of Clonazepam, and 16mg of suboxone. The toxicologist did not obtain a Tylenol level though Hayes did report taking Tylenol PM that day. Hayes did not specify any amount. Hayes reported taking Xanax (Alprazolam) 3 pills, but no Xanax (Alprazolam) was found in his blood at autopsy.

The medical examiner determined the levels of medication in Mr. Hayes' blood were not extremely elevated. It is likely that Hayes experience a compounding effect of multiple medications he was taking and was susceptible to an overdose at a lower level of clonazepam when combined with Tylenol PM and Suboxone.

## Discussion

It is evident that polysubstance abuse is an ever-increasing cause of death. In Hayes case, he mixed multiple medications and made multiple choices which limited Davis County's ability to care for him. Gregory Hayes made several choices that contributed to his death.

#1 Mr. Hayes had used drugs for many years and even his mother, when notified by the police, stated she thought his addiction would ultimately have a poor outcome. While being incarcerated for two months before his death, he likely lost his tolerance to taking higher doses

of medication to get high. Though overdoses on Clonazepam resulting in death are rare when benzodiazepines are mixed with sleeping medication and opioids, it is a well known deadly combination. The choice to combine these medications with Tylenol PM of an unknown quantity was determined to be the ultimate cause of his death.

#2. Mr. Hayes had an opportunity to seek medical care on his own and "adamantly" declined it. The officers contacted 911 and brought an ambulance to his home, and he refused medical attention or to be evaluated by a physician. There is no clear indication that if Mr. Hayes would have been transported to the hospital that his death would have been avoided, but he was offered this treatment by Clearfield police and declined.

#3. Mr. Hayes misrepresented his consumption of drugs to Officer Arnell. Hayes stated he took three pills of Clonazepam and two Tylenol PM tablets. Hayes did not indicate to Arnell or the medical staff that he had taken Suboxone in addition to Clonazepam at any time. If Mr. Hayes had been sent to the hospital it is likely he would have reported similar pill ingestion to the emergency physician. It is likely that the emergency physician would not have ordered blood work on a self reported low dose of ingestion and cleared him for jail without further monitoring. I have seen patients released into jail custody without toxicology for higher ingestions.

#4. Mr. Hayes had a second opportunity, to tell the truth about his consumption of Clonazepam and Suboxone when he was booked into jail but did not tell the officers or medical staff. The officers and medical staff were under the assumption that Hayes was "sleepy and falling asleep" because he took three anxiety pills and a two Tylenol PM tablets. The amount of medication reported would not alert an officer, layperson, or nurse to take Hayes to the hospital emergently against his will.

#5 Hayes was discharged with a bottle of Clonazepam with twenty-three tablets. However, he contacted another person by telephone before getting high. It is unclear if Hayes sold, traded, hid, flushed, or took the entire prescription of Clonazepam. His blood levels are not consistent with taking 23 mg of medication. It is documented in the autopsy report that 20mg of Clonazepam is a non-lethal dose. However, when mixed with other substances such as Tylenol PM and Suboxone it has a compounding effect. Andrew Hayes testified that the pill bottle was empty and was left in the trash at his house. The nurse and officers at Davis county jail did not visually inspect the pill bottle or have clear evidence that Hayes ingested all 23mg. He may have hidden the rest of the pills knowing that bringing them back to jail may cause more concern about his drug use. He may have had concerns that the jail would confiscate his medication if he brought it back to the jail due to his drug usage.

#6 If Hayes were truthful about the amount of medication he had consumed his outcome would have potentially been different. It is very likely that officers and nursing staff would have demanded Hayes be evaluated at the hospital if he had reported consuming twenty-three pills of Clonazepam in conjunction with Suboxone and Tylenol PM. Hayes failed to appropriately notify the custody and nursing staff of his overdose resulting in his death.

#7 Kenneth Hatfield testified that Hayes was appropriately booked into jail and went through the intake process. Baer testified he had no issues whatsoever at booking. I disagree with Mr. Star when he opines, "The jail staff admitted a patient who was medically compromised without any medical screening and then planned to watch him closely in an unmonitored setting." It is common in Utah jails to not have nursing at the booking or intake process. Officers are commonly tasked with doing intake screening questions on intoxicated patients.

This is not a deviation from the booking process. There would be no reason to place Hayes on watch if he was able to complete the booking process without an issue.

Utah jails continue to have severe polysubstance abuse patients booked into jails every day. Not every intoxicated individual should be housed in the medical unit under constant monitoring. There would be no room in the medical wing for sick or injured patients if all the cells were taken up by every patient who admits to drug or alcohol use when being booked into jail. Hayes was falling asleep during the booking process. It is reasonable to attribute his behavior to 3 Clonazepam and two Tylenol PM tablets which he reported consuming. The booking officers appropriately contributed Hayes drowsiness to the medications he reportedly ingested. Patients frequently have sleep apnea when taking sleeping medication. Nurse Layton evaluated Hayes, and he appropriately thought Hayes was suffering from sleep apnea. Sleep apnea is a common problem in jails. It is not a hospital emergency, and typically patients require waking and repositioning to enhance their airway. This is a reasonable nursing assessment and treatment.

## Expert Opinion

It is my professional opinion that the Davis County medical staff nurse Daniel Layton and the sheriff's department worked within the scope of practice of their respective licenses. The assessments were reasonable within a degree of medical certainty. Deputy Baer made a reasonable initial assessment of Hayes and housed him appropriately based on that assessment. Layton evaluated, provided treatment when asked by custody staff. Officer Reid continued to check on Hayes throughout the night. Officers were instructed to contact medical if Hayes's condition worsened in any way. The defendants did not delay or deny treatment when it was noted that Hayes had difficulty breathing while sleeping. Nurse Layton made appropriate clinical decisions within a reasonable degree of medical certainty based on the information and interactions he had at the time. Vital signs were obtained and improved when the Hayes was awoken. There is no clear indication having had vital signs done every 30 minutes and housing in the medical unit would have changed the outcome of this patient. It is regrettable that Hayes died from a drug overdose, but it is likely other nursing providers would have made similar assessments and treatment decisions given the knowledge that was present at the time. The health care provided was compassionate and rendered promptly. The sheriff's department and officers involved acted appropriately. Officers did an excellent job of doing the wellbeing checks. They noted that Hayes was having difficulty breathing and contacted nursing staff as expected. When nurse Layton was asked to respond to Hayes, he did so in a timely manner. When Hayes was found unresponsive officers rushed to the scene to help, and 911 was contacted without delay.

I disagree with Dr. Ken Star when he opines, "If a pulse oximeter would have been applied then Mr. Hayes respiratory failure would have been completely preventable, as it would have been detected early." Mr. Hayes was thought to be suffering from sleep apnea due to the ingestion of Tylenol PM. Clonazepam and Tylenol PM both cause patients to sleep deeply and soundly causing sleep apnea. During apneic events patients oxygen saturations significantly decline as was the cause of bluish lips in Hayes case. The officers noted the apneic events and contacted medical for snoring and turning blue. A nurse's first line of treatment for an apneic

patient is to attempt to arouse the patient from sleep. When a patient is repositioned or awakened his oxygen saturations improve spontaneously and resolve the apnea. If the patient did not improve in color after being awoke then a more detailed respiratory examination including pulse oximetry should have been used to determine if there is another possible cause for respiratory failure which there was not. It is medically reasonable to not apply a pulse oximeter to a patient with sleep apnea when they improve spontaneously with repositioning and awakening.

## Summary of opinions

**In my opinion, the nurses and custody staff at Davis County did not ignore or fail to timely respond to Hayes's medical needs.**

**It is my opinion, Mr. Hayes contributed to his death by not providing the medical staff with a complete and accurate clinical history of his drug ingestion.**

**It is my opinion, Mr. Hayes contributed significantly to his death by declining medical services at the time of arrest.**

**It is my opinion, Daniel Layton provided reasonable care each time that Mr. Hayes was evaluated with the knowledge that he had at the time of caring for Hayes.**

**It is my opinion, the custody staff appropriately booked and housed Hayes based on his presentation at booking.**

## Epilogue

Mr. Hayes had a complicated polysubstance abuse addiction, family stress, financial problems, arrests, multiple incarcerations and marital conflict. It is well known that patients with polysubstance abuse complicated by social issues lead to a poor prognosis for drug treatment and a high morbidity rate. Mr. Hayes's death was unfortunate but was not caused or foreseen by the arresting officer, jail or medical staff. It is a common result of years of substance abuse.

This opinion is within a reasonable degree of medical certainty. I reserve the right to modify this opinion if new factual information becomes available that would alter this opinion.

Sincerely;

*Kennon Tubbs*

Kennon Tubbs MD, CCHP-P

# Kennon C. Tubbs M.D.
13584 S. Carolina Hills Court
Draper, Utah 84020
(801) 501-9573 Home
(801) 502-3473 Cell
jailmd@gmail.com

---

**EDUCATION:**

| | |
|---|---|
| 1996-1999 | *Utah Family Practice Residency*, Provo, Utah |
| | Board Certification in Family Medicine: expires January 2026 |
| | Senior Resident Teaching Award: 1997-98 and 1998-1999 |
| | David Flinders Award: 1998-1999 for excellence in Behavioral Medicine |
| 1992-1996 | *Georgetown University School of Medicine*, Washington, D.C. |
| | Doctor of Medicine: May 1996 |
| | Health Care America with Hillary Clinton: 1996 |
| | AIDS Outreach Program: 1993 |
| 1988-1992 | *Colorado State University*, Fort Collins, Colorado |
| | Bachelor of Science major Biology: July 1992 |

**CLINICAL EXPERIENCE:**

| | |
|---|---|
| 2019-Present | *Tooele County Jail Medical Director*, County jail of 230 inmates. |
| 2002-Present | *Duchesne County Jail Medical Director*, County jail of 120 inmates. |
| 2002-Present | *Daggett County Jail Medical Director* County Jail of 110 inmates |
| 2007-Present | *Uinta County Jail Medical Director* County jail of 100 inmates |
| 2007-Present | *Sweetwater County Jail Medical Director* County jail of 150 inmates |
| 2009-Present | *Summit County Medical Director* County jail of 70 inmates. |
| 2009-Present | *Wasatch County Medical Director* County jail of 70 inmates. |
| 2009-Present | *Utah County Jail Medical Director* County jail of 750 inmates. |
| 2016-Present | *Lincoln County Jail Medical Director* County jail of 70 inmates. |
| 2016-Present | *Juab County Jail Medical Director* County jail of 60 inmates. |
| 2016-Present | *Teton County Jail Medical Director* County jail of 30 inmates. |
| June 2017-Present | *Granger Urgent Care* Urgent Care 4 different clinics in Salt Lake |
| 2007-2017 | *Uintah County, Utah Jail Medical Director* County jail of 90 inmates |
| Sept 2006-Present | *Octapharma* Plasma Donation Center back up physician. |
| Oct 2015- July 2016 | *Stat+MD Urgent Care*. Urgent Care work at privately owned urgent care in Park City, Utah |
| July 1999- Sept. 2015 | *Utah State Prison Physician*, Attending physician duties include overseeing six physician assistants, specialty clinics in Women's Health, Hepatitis, Diabetes, Trauma management, Drug rehabilitation and Emergency care. Inpatient rounds and primary care provider for difficult cases that are referred by physician assistants. Coordinate university hospitals care and appropriate specialty consultation. |
| 2002-2012 | *Holland America*, Cruise ship physician for 1500 passenger cruise line 2 week commitment per year. Have cruised to Alaska, Hawaii, Mexico, Baltic Sea, Japan, China, Norway, North Sea and Caribbean Sea. |
| 2008-2012 | *Mixed Martial Arts Physician*, Ultimate Combat Experience ringside physician. |
| 1997-2007 | *Emergency Room Physician*, Orem Community Hospital and Utah Valley Hospital. Full emergency hospital privileges. Single coverage E.R. level 3 hospital 15000 patient visits per year. |

| | |
|---|---|
| 1996-1999 | *High School Team Physician*, Sports Medicine care at football, basketball, and other athletic events for Provo High School. |
| 1998 | *Alaska Indian Health Service*, Metlakatla, AK. Complete health coverage for the Annette Island Indian Reservation (2 month rural rotation residency). |
| 1997 | *Yosemite National Park Physician*, Emergency Services for rural health clinic and rural to wilderness emergency triage and transport services. Residency elective training 2 months |
| 1993-1994 | *Food and Drug Administration*, Washington D.C. New Drug Approval Committee medical student internship. |

**MEMBERSHIPS:** National Commission on Correctional Medicine member
American Academy of Family Physicians Diplomat
Currently Board Certified until 2026
National Commision on Correctional Health Care certified Physician

**LICENSURE:** Utah CS Schedule 2-5 #344132-8905 expires 01/31/2022
Utah Medical Licensure 3344132-1205 expires 01/31/2022
Wyoming State Licensure 7730A expires 6/30/2021
DEA BT5545100 expires 11/2021
BLS expires 6/21

## HONORS/AWARDS

**National Health Service Scholarship**
2000-2006, Scholarship for primary care service to underserved patient populations.
**David C. Flinders Award** for Excellence in Behavioral Medicine
Utah Valley Family Practice Residency 1999
**Senior Resident Excellence in Teaching Award**
Utah Valley Family Practice Residency 1999-1998 and 1998-1997
**Galaxo Wellcome Family Practice Resident Scholar**
Utah Chapter 1998

**REFERENCES:** **Richard Garden, M.D.**
Utah State Prison Medical Director 1999-2015
Office: 801-243-4714
415 East 3900 South
Salt Lake City, Utah 84107
**Sidney Roberts M.D.**
Utah State Prison Medical Doctor (Partner) 1999-2015
Office 801-671-1387
2126 East Candle Spruce Cove, Utah 84092
**Dale Bench R.N.**
Director of Nursing Utah County Jail
801-376-3601
**Joe Coombs P.A.**
Utah State Prison Physician Assistant Supervisor 1999-Present
435-671-1586
**Logan Clark P.A.**
Physician Assistant County Jail Medicine 2006-Present
(801)-699-1127

## Deposition File:

**GREYGOR v. WEXFORD HEALTH SOURCES, INC.**
Civil Action No. 2:14-cv-1254
Deposition taken July 2016 Hired by Goodrich & Geist, P.C. Plaintiff as an expert in correctional medicine as a treating physician.

**IAN D. COFFEY v. DAVIES-DEKALB COUNTY JAIL AND ADVANCED CORRECTIONAL HEALTHCARE INC.**
Civil Action No. 15DV-CC00085
The deposition was taken May 2017 Hired by Advanced Correctional Healthcare Defendant as an expert in correctional medicine as a treating physician.

**TRUJILLO v. CITY AND COUNTY OF DENVER**
Civil Action No. 14-cv-02798-RBJ-MEH
The deposition was taken March 2017 hired by Holland & Hart LLP Plaintiff as an expert in correctional medicine as a treating physician.

**HARVEY BROADUS V. MICHAEL HERBIK, CORRECT CARE SOLUTIONS, INC. and WEXFORD HEALTH SOURCES**
Case No. 2:2016cv00751 Deposition taken August 1st, 2017 Hired by Meyers Evans & Associates, LLC Plaintiff as an expert in correctional medicine as a treating physician.

**Carl Hemphill v. Wexford Health Sources**
Case No. 15-CV-04968 Deposition taken December 13, 2018 by Plaintiff Andrew McClain
Hired by James Maruna Defense as an expert in correctional medicine as a treating physician.

**Pamela Barrier v. Armor Correctional Health**
Case No. 50-2012-CA022822-XXXX-MD
The deposition was taken January 7th, 2019 by Defense Jami Gursky
Deposition was taken a second time on August 27th, 2019
Hired by Howard Grossman Plaintiff as an expert in correctional medicine as a treating physician.

**Wendell Weaver v. Martija, Becerra, Pfister, Lamb, Baldwin, Obaisi**
Case No. 16-CV-09400
June 27, 2019
Deposition as expert in correctional medicine Hired by Defense Obaisi.
Hired by James Maruna Defense as expert in correctional medicine as a treating physician.

**Ira B Harris v Gary Kempker**
Case No. 1:15-cv-00140-SNLJ
August 20, 2019
Deposition as expert in correctional medicine Hired by Defense Tad Eckenrode

**Scott Peters v. Wexford Health Sources**
Case No. 1:17-cv-04809
Deposition taken January 10th, 2020 by plaintiff Kirkland and Ellis, LLP
Deposition as expert in correctional medicine hired by James Maruna Defense

**Demario McNeil v. Saleh Obaisi**
Case No. 16-C-11256
Deposition taken January 14th, 2020 by plaintiff Demetra Christos
Deposition as expert in correctional medicine hired by James Maruna defense.


Expert Fee Schedule

DESCRIPTION OF SERVICES. Consultant will provide the following services (collectively, the "Services"): document review, phone consultation, written summary, deposition, testimony. Services are billed at $500 per hour or $3500.00 per day for depositions, travel days, and testimony.
EXPENSE REIMBURSEMENT. Consultant shall be entitled to reimbursement from Client for the following "out-of-pocket" expenses: travel expenses and travel related meals to include airfare, medium size rental car, four star hotel, $140 per day meal per diem. Expert may retain 50% of advance payment for testimony cancelled within 5 business days of its scheduled time. Expert will be paid for full testimony if canceled with less than 48 hours notice.